# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SHANNETTE L. TILLA,

      Plaintiff,

      vs.                                       Civ. No. 17-93 KK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed June 2, 2017, in support of Plaintiff Shannette L. Tilla's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits. On August 3, 2017, Plaintiff filed her Motion to Reverse and Remand For A Rehearing With Supporting Memorandum ("Motion"). (Doc. 18.) The Commissioner filed a Response in opposition on September 29, 2017 (Doc. 20), and Plaintiff filed a Reply on October 24, 2017. (Doc. 24.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 23.)

## I. Background and Procedural Record

Claimant Shannette Tilla ("Ms. Tilla") alleges that she became disabled on December 1, 2009, at the age of thirty-seven because of a tumor in her spine, back pain, hernia, severe nerve damage, and depression. (Tr. 42, 278, 283.[2]) Ms. Tilla completed three years of college in 1999, and worked as a bartender, disability home caretaker, home health caretaker/supervisor, and a casework supervisor for the State of New Mexico. (Tr. 48-51, 284, 291, 310.) Ms. Tilla reported she stopped working on December 22, 2004, due to her medical conditions. (Tr. 283.)

On February 11, 2013, Ms. Tilla protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. (Tr. 251-54, 279.) She also protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 255-60.) Ms. Tilla's applications were initially denied on June 20, 2013. (Tr. 100, 101-116, 117, 118-130, 163-66, 167-70.) They were denied again at reconsideration on September 4, 2013. (Tr. 131, 132-45, 147, 148-61, 176-79, 180-83.) On November 5, 2013, Ms. Tilla requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 184-85.) The ALJ conducted a hearing on July 16, 2015. (Tr. 35-94.) Ms. Tilla appeared in person at the hearing with attorney representative Michael Armstrong. (*Id*.) The ALJ took testimony from Ms. Tilla (Tr. 44-50, 51-52, 53-78), from Ms. Tilla's husband, David Lee (Tr. 79-88), and an impartial vocational expert ("VE"), Sandra Trost (Tr. 50-51, 52-53, 88-93). On September 10, 2015, ALJ Eris Weiss issued a partially favorable decision, finding that Ms. Tilla was not disabled at any time through December 31, 2009, her date last insured, but that she became disabled on October 30, 2013. (Tr. 13-29.) On November 18, 2016, the Appeals Council issued its decision denying

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on June 2, 2017.

Ms. Tilla's request for review and upholding the ALJ's final decision. (Tr. 1-3.) On January 18, 2017, Ms. Tilla timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365

F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made a partially favorable decision finding that Ms. Tilla was not disabled at any time through her date last insured, but that she has been disabled since October 30, 2013. (Tr. 13-29.) The ALJ determined that Ms. Tilla met the insured status requirements of the Social Security Act through December 31, 2009, and that Ms. Tilla had not engaged in substantial gainful activity since the alleged onset date. (Tr. 19.) He found that Ms. Tilla had severe impairments of mild disc degeneration, disc protrusion, facet and ligamentous hypertrophy resulting in mild biforaminal stenosis and exiting nerve abutment at L5-S1, Schwannoma at L4-L5, obesity, Guillain-Barré syndrome, hernia, obstructive sleep apnea, major depressive disorder,

anxiety disorder, and posttraumatic stress disorder. (*Id.*) The ALJ also found that Ms. Tilla had nonsevere impairments of hypertension, diabetes mellitus, hypoxia, and dysmenorrhea. (Tr. 19-20.) The ALJ, however, determined that since the alleged onset date, Ms. Tilla's impairments did not meet or equal in severity one of the listings described in Appendix 1 of the regulations. (Tr. 20.) As a result, the ALJ proceeded to step four and found that, *prior to October 30, 2013*, Ms. Tilla had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(c) and 416.967(a) including

> the ability to lift 10 pounds occasionally and lift or carry less than 10 pounds frequently and push or pull the same. She was able to walk or stand for two hours per eight-hour day and sit for six hours per eight-hour day with normal breaks. She was able to occasionally climb ramps and stairs, but never ladders, ropes and scaffolds. She was able to occasionally balance, stoop, crouch, kneel, and crawl. She had to avoid more than occasional exposure to unprotected heights and moving machinery. She was able to understand, remember, and carry out simple instructions of a repetitive nature and make commensurate work related decisions. She was able to adjust to routine changes in the workplace. She was able to have occasional interaction with supervisors, co-workers, and the public. She was able to maintain concentration, persistence and pace for two hours at a time throughout the eight-hour workday with normal breaks.

(Tr. 22.) *Beginning October 30, 2013*, the ALJ determined that Ms. Tilla had the residual functional capacity to perform sedentary work as above, but that she was no longer capable of maintaining concentration and persistence and pace for two hours at a time throughout the eight-hour workday. (Tr. 25.) Instead, the ALJ determined that "due to physical and mental impairments, she will be off task 15 minutes every two hours of the eight-hour workday in addition to normal breaks and will be absent from the workplace four days each month." (*Id.*) The ALJ further concluded at step four that Ms. Tilla was unable to perform any past relevant work. (Tr. 26.) The ALJ determined at step five that, *prior to October 30, 2013*, based on Ms. Tilla's age, education, work experience, RFC, and the testimony of the VE, there were jobs that existed in significant numbers in the national economy that Ms. Tilla could perform, and that

6

she was, therefore, not disabled. (Tr. 25-26.) *Beginning October 30, 2013*, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Ms. Tilla could perform, and that she was, therefore, disabled as of that date. (Tr. 28.)

In support of her Motion, Ms. Tilla argues that the ALJ, having determined she was disabled, was required to apply and follow SSR 83-20[4] to determine her onset of disability, but failed to do so. (Doc. 18 at 10-15.) Ms. Tilla further argues that the ALJ improperly inferred an onset date in the face of ambiguous medical evidence without calling upon the services of medical advisor as required by SSR 83-20 and Tenth Circuit case law. (*Id.*) In the alternative, Ms. Tilla argues (1) that the ALJ failed to provide adequate reasons for rejecting CNP Lyn Dawson's opinion as of the alleged onset date of December 1, 2009; and (2) that the number of available jobs identified at step five was questionable and required the ALJ to conduct an analysis pursuant to *Trimiar*.[5] (*Id.* at 15-20.) The Commissioner contends that the ALJ's determination regarding Ms. Tilla's onset date is supported by substantial evidence; that CNP Dawson's opinion was not retrospective and, therefore, did not address Ms. Tilla's ability to do work-related activities before October 30, 2013; and that the ALJ's step five determination did not require the ALJ to consider the *Trimiar* factors. (Doc. 20 at 5-12.)

For the reasons discussed below, the Court finds that the ALJ erred in failing to apply SSR 83-20 to determine Ms. Tilla's onset date of disability. The Court further finds that because the medical evidence regarding Ms. Tilla's onset of disability is ambiguous, the ALJ was required to call upon the services of a medical consultant to ensure that the determination of onset had a legitimate medical basis. As such, this case requires remand.

---

[4] SSR 83-20, 1983 WL 31249, *Title II and XVI: Onset of Disability*.

[5] *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).

## A. The ALJ Failed to Apply SSR 83-20 In Determining Ms. Tilla's Onset of Disability

To qualify for disability benefits, a claimant must establish that she is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E) (the "Act"). The Act states that "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). In 1983, the Commissioner adopted Social Security Ruling (SSR) 83-20, "Titles II and XVI: Onset of Disability," "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations." SSR 83-20, 1983 WL 31249, at *1. Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *accord Blea v. Barnhart*, 466 F.3d 903, 911 (10th Cir. 2006). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1.

SSR 83-20 recognizes that determining the onset date is critical in many cases, and where the medical evidence does not establish a precise onset date, it will be necessary to infer the onset date from record evidence. SSR 83-20, 1983 WL 31249, at *2. SSR 83-20 provides guidance for determining the onset date in cases of traumatic and nontraumatic origin. It explains that the onset date for a disability of traumatic origin is simple to determine: the onset date is the date of the injury. *Id.* at *3. Determining the onset date for a disability of nontraumatic origin is more complicated. In doing so, the ALJ must consider several factors: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. The ALJ should adopt the onset date alleged by the individual if

it is consistent with all of the available evidence. *Id.* at *3. Medical evidence is the most important factor in determining the onset date, and the onset date can never be inconsistent with the medical evidence. *Id.* at *2. When the medical evidence does not establish a precise onset date, the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.; see also Blea v. Barnhart*, 466 F.3d 903, 909 (10th Cir. 2006). An ALJ "may not make negative inferences from an ambiguous record; rather, he must call a medical advisor pursuant to SSR 83-20." *Blea*, 466 F.3d at 913. Thus, the Tenth Circuit has held that "where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor." *Blea*, 466 F.3d at 911. The onset date selected by the ALJ must have a "legitimate medical basis," and a "[c]onvincing rationale must be given for the date selected." SSR 83-20, 1983 WL 31249, at *3. "In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ [does] not have the discretion to forgo consultation with a medical advisor." *Blea*, 466 F.3d at 911-12 (quoting *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995)). Whether to call a medical advisor turns on "whether the evidence concerning the onset of [claimant's] disabilities was ambiguous, or alternatively, whether the medical evidence clearly documented the progression of [claimant's] conditions." *Blea*, 466 F.3d at 912.

In *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), the controlling Tenth Circuit case addressing the application of SSR 83-20, Mr. Blea applied for disability insurance benefits and supplemental social security income in March 2002, and alleged an onset date of June 1997. *Id.* at 906. His date of last insured was December 31, 1998. *Id.* Mr. Blea's applications were initially denied. *Id.* At reconsideration, however, the Commissioner determined that Mr. Blea was disabled and entitled to supplemental security income as of March 1, 2002, but that his

impairments were not disabling on any date through his last date of insured. *Id.* As such, the Commissioner determined Mr. Blea was not entitled to disability insurance benefits. *Id.* Mr. Blea requested a hearing with respect to the denial of his Title II claim, and the ALJ subsequently denied his claim. *Id.* at 906-07. In so doing, the ALJ did not determine an exact onset date pursuant to SSR 83-20, but rather applied the five-part sequential analysis and determined that because Mr. Blea retained the capacity for sedentary work as of his date of last insured, he could not have been disabled and was not entitled to disability insurance benefits. *Id.* at 907. The Appeals Council declined Mr. Blea's request for review. *Id.* at 908. On appeal, Mr. Blea argued, *inter alia*, that because the Commissioner found him disabled on his Title XVI claim, the ALJ erred by not applying SSR 83-20 to determine the onset date of his disability for his Title II claim. *Id.* The Tenth Circuit agreed and held that the ALJ's step-five conclusion that Mr. Blea retained RFC to perform sedentary work prior to his date of last insured did not relieve the ALJ of applying the clear directives of SSR 83-20 to determine the onset of disability. *Id.* at 911. The court further held that because the medical evidence of onset was ambiguous due to gaps in the available medical evidence, the ALJ was obligated to call upon the services of a medical advisor to ensure that the determination of onset was based upon a "legitimate medical basis." *Id.*

While the procedural facts of this case are almost identical to those presented in *Blea*, unlike *Blea*, this is not a case where the medical evidence is ambiguous because adequate medical records were not available during the relevant period of time. *Blea*, 966 F.3d at 912-13. Instead, Ms. Tilla argues that the onset of disability is ambiguous because available medical evidence demonstrates the possibility of an onset date prior to her date of last insured. (Doc. 18 at 12.) *See generally, Bigpond v. Astrue*, 280 F. App'x 716, 717-18 (10th Cir. 2008)

(unpublished) (analyzing whether the ALJ was required to consult a medical advisor regarding onset date of disability where claimant had medical records from the relevant time); *see also Blea*, 466 F.3d at 911 (the court considers "whether the evidence is ambiguous regarding the possibility that the onset of [claimant's] disability occurred before the expiration of her insured status") (quoting *Grebenick v. Chater*, 121 F.3d 1193, 1200-02 (8th Cir. 1997)). Here, Ms. Tilla applied for both disability insurance benefits and supplemental security income. She alleged an onset date of December 1, 2009. (Tr. 278.) Her date of last insured was December 31, 2009. (Tr. 279.) The ALJ determined that the medical evidence clearly documented that Ms. Tilla's conditions progressively worsened as of October 30, 2013, and that she was therefore disabled as of that date and entitled only to supplemental security income. (Tr. 25.) Ms. Tilla argues that having found she was disabled, the ALJ was required to apply SSR 83-20 to determine her onset of disability. (Doc. 18 at 10-15.) She further argues that because the medical evidence concerning the onset of her disabilities is ambiguous, the ALJ was required to consult with a medical advisor to insure a legitimate medical basis for her onset of disability. (Doc. 18 at 10-15.)

The Commissioner contends that the ALJ properly proceeded through the five-step sequential analysis to determine that Ms. Tilla was not disabled prior to her date of last insured, and that the ALJ applied SSR 83-20 to establish the October 30, 2013, onset date. (Doc. 20 at 5.) The Commissioner further contends that the medical evidence concerning the onset date of disability is not ambiguous, and that even if the ALJ inferred Ms. Tilla's disability onset date, rather than firmly established it, the evidence supports the inference. (*Id.* at 6-7.) Finally, the Commissioner asserts that as of October 17, 2016, the Social Security Administration clarified that SSR 83-20 does not impose a mandatory requirement on an ALJ to call on the services of a

11

medical expert when onset must be inferred, and that the decision to do so is always at the ALJ's discretion. (*Id.* at 7-8.) As such, the Commissioner asserts that Ms. Tilla has misstated the requirements of SSR 83-20 with respect to consulting a medical advisor. (*Id.*)

The Court is not persuaded by the Commissioner's arguments for several reasons. As to the Commissioner's final argument, the ALJ made his determination on September 10, 2015. (Tr. 13-29.) The Administration's EM-16036 – Clarification of Social Security Ruling 83-20 – was not effective until October 17, 2016, thirteen months after the ALJ's determination.[6] The Commissioner's argument, therefore, is misplaced. As to the Commissioner's other arguments, *Blea* clearly instructs that an ALJ's finding of RFC at step five does not mean that the ALJ can ignore the clear directives of SSR 83-20 as the ALJ did here. *Blea*, 466 F.3d at 911. Moreover, it is not apparent from the ALJ's decision that he acknowledged or applied SSR 83-20 to establish the October 30, 2013, onset date, as the Commissioner argues. The ALJ did not even cite to SSR 83-20 in his determination. The ALJ did not discuss: his evaluation of the relative weight of Ms. Tilla's alleged onset date; her work history and the day her impairments caused her to stop working; inferences drawn from all of the medical evidence; or how those factors worked together to lead to an inference for the date of onset he determined. *See* SSR 83-20, 1983 WL 31249, at *2. As such, the Court will not adopt the Commissioner's post-hoc rationalization for the ALJ's lack of findings that are not apparent from the ALJ's decision itself. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision). Furthermore, the Court agrees that having determined Ms. Tilla was disabled, the ALJ was required to apply SSR 83-20 as the controlling standard for determining the onset of

---

[6] *See* Social Security Emergency Message 16036, *available at* https://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM.

disability. *Blea*, 466 F.3d at 909. Additionally, because the Court concludes, for the reasons discussed below, that the medical record evidence is ambiguous as to Ms. Tilla's onset of disability, the ALJ was required to obtain testimony from a medical advisor to ensure that the determination of onset had a legitimate medical basis. *Blea*, 466 F.3d at 912; SSR 83-20, 1983 WL 31249, at *2-3.

The ALJ modified Ms. Tilla's RFC and determined an onset date of October 30, 2013, in reliance on treatment notes and a medical source statement prepared by Ms. Tilla's treating provider, CNP Lyn Dawson, on the same date. (Tr. 25.) CNP Dawson's treatment notes from October 30, 2013, indicate she assessed Ms. Tilla with Guillain-Barré Syndrome, Lumbosacral Neuritis, and Anxiety. (Tr. 827.) In her medical source statement, CNP Dawson assessed that pain and fatigue associated with Ms. Tilla's history of Guillain-Barré syndrome, large Schwannoma tumor/nerve impingement, and very large abdominal hernia, precluded Ms. Tilla's ability to do work-related physical activities. (Tr. 771.) Specifically, CNP Dawson assessed that Ms. Tilla could occasionally and frequently lift less than five pounds; that she could stand and/or walk less than two hours in an 8-hour day; that she had to alternate sitting, standing and laying down to relieve pain or discomfort throughout the day; that she had a limited ability to push and/or pull with her lower extremities; that she had manipulation limitations; and that she could never kneel, stoop, crouch and/or crawl. (*Id.*) The ALJ accorded CNP Dawson's opinion significant weight explaining, without more, that it was "well-supported by the objective medical evidence and it is consistent with the record [as] a whole, including the claimant's progressively worsening reports of physical abilities due to pain." (Tr. 25.) Notably, the ALJ did not modify the exertional limitations of his pre-October 30, 2013, RFC based on CNP Dawson's opinion despite according it significant weight. Instead, he assessed that as of October 30, 2013,

13

Ms. Tilla remained capable of sedentary work, but would be off task 15 minutes every two hours and absent from work four days each month due to physical and mental impairments. (*Id.*)

In further support of his October 30, 2013, onset date, the ALJ cited (1) an April 2015 MRI study that documented mild disc degeneration, disc protrusion, facet and ligamentous hypertrophy resulting in mild biforaminal stenosis and existing nerve abutment at L5-S1; (2) an April 2015 progress note that indicated an electrodiagnostic study showed evidence of demyelinating disorder consistent with Ms. Tilla's history of severe Guillain-Barré syndrome; (3) psychotherapy progress notes from April 2014, November 2014 and January 2015 indicating a diagnosis of posttraumatic stress disorder and associated symptoms, in addition to complaints of depression and mood instability; and (4) two medical source statements from April 2014 and May 2015 related to Ms. Tilla's ability to do work-related mental activities, to which the ALJ accorded great weight. (Tr. 26.)

The ALJ's discussion of the foregoing evidence, however, fails to explain how the October 30, 2013, onset date he established is consistent with medical record evidence during the relevant period of time. "The established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." SSR 83-20, 1983 WL 31249 at *3. Ms. Tilla was followed by Valerie Carrejo, M.D., of First Choice Community Healthcare from 2008 through 2012 for, *inter alia*, chronic pain management. (Tr. 772-800.) On December 30, 2008, Dr. Carrejo referred Ms. Tilla for continued home wound care.[7] (Tr. 573.) On March 19, 2009, Dr. Carrejo referred Ms. Tilla for an in-home patient care aide and explained that Ms. Tilla

---

[7] Ms. Tilla developed a wound infection following a Caesarean Section and was initially referred for at home wound care on November 1, 2008, by UNM Physician Erin Lunde, M.D. (Tr. 487, 518-535.) Ms. Tilla received skilled nursing care at home from November 7, 2008 through December 29, 2008 (Tr. 484-536); from January 5, 2009 through February 18, 2009 (Tr. 570-622); and on March 20, 2009 (Tr. 538-39, 541-569). The skilled nursing care notes indicated Ms. Tilla's other risk factors and diagnoses included spinal compression, Guillain-Barré Syndrome, and leg weakness due to "tumor of spine." (Tr. 520, 561, 605.)

had multiple comorbidities including (1) chronic back pain due to compression fracture of spine and Schwannoma (peripheral nerve tumor) in spine; (2) recent Caesarean Section with wound infection that was still healing; (3) anxiety; and (4) morbid obesity. (Tr. 540.) Dr. Carrejo stated that given Ms. Tilla's multiple medical issues and chronic pain, she was unable to take care of her infant and keep up her home alone, and needed basic homemaking services. (*Id.*) Based on Dr. Carrejo's referral, Ms. Tilla had a patient care aide for an average of four hours a day, for four to five days per week, from July 1, 2009, through December 15, 2010. (Tr. 624-711.) The patient care aide did laundry, changed linens, cleaned the kitchen and bathroom, vacuumed and dusted, and straightened the living areas. (*Id.*) The patient care aide's service records frequently included notes indicating that Ms. Tilla was in a lot of pain and bedridden during this time. (Tr. 623, 626-27, 636, 644, 665-69, 678, 684-85, 688, 690, 692, 694, 700, 702-04.) Ms. Tilla also saw Dr. Carrejo for office visits twenty (20) times from May 7, 2009, through October 23, 2012.[8] (Tr. 720-40, 772-800.) Dr. Carrejo's treatment notes indicate Ms. Tilla's persistent complaints and treatment for depression and anxiety, as well as for neuropathic pain and weakness, chronic back pain, and abdominal pain related to Guillain-Barré syndrome, Schwannoma, and abdominal hernia. (Tr. 725-29, 773-80, 782-84, 786.) Dr. Carrejo referred Ms. Tilla to various specialists,[9] and prescribed Methadone, Oxycodone, Percocet, Paxil and Depakote. (*Id.*) Despite the ALJ's access to Dr. Carrejo's four years of treatment notes, including treatment notes that pre-dated Ms. Tilla's date of last insured,[10] the ALJ mentioned only one note in his discussion of

---

[8] Dr. Carrejo left First Choice Community Healthcare and Ms. Tilla then saw Maryalyse Adams Mercado, M.D., on November 27, 2012, and January 17, 2013. (Tr. 723-24.) On January 24, 2013, Ms. Tilla transferred her care to ABQ Health Partners. (Tr. 751.)

[9] Ms. Tilla did not always follow through with Dr. Carrejo's referrals and explained to Dr. Carrejo that she would get overwhelmed with multiple appointments and needed to focus on one issue at a time. (Tr. 727.)

[10] The ALJ accorded significant weight to the State agency nonexamining medical and psychological consultant opinions in finding Ms. Tilla not disabled prior to October 30, 2013. (Tr. 24.) The Court notes, however, that the

Ms. Tilla's pre-October 30, 2013, records; *i.e.,* that in September of 2012, Ms. Tilla reported depressive symptomology to her treating physician.[11] (Tr. 24.) Thus, the ALJ completely ignored significantly probative and relevant evidence in determining Ms. Tilla's onset of disability. An ALJ is required to discuss significantly probative evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1266 (10th Cir. 2005).

On January 24, 2013, Ms. Tilla began seeing CNP Lyn Dawson of ABQ Health Partners based on a referral from Maryalyse Adams Mercado, M.D., of First Choice Community Healthcare. (Tr. 858-61.) Ms. Tilla reported her several year history of back pain and having been diagnosed with Guillain-Barré syndrome in January 2005. (Tr. 860.) Ms. Tilla complained at her first visit with CNP Dawson of low back and leg pain, and told CNP Dawson that the neuropathy she developed from Guillain-Barré syndrome was constant. (*Id.*) CNP Dawson agreed to help Ms. Tilla with her pain medications and ordered a new MRI. (Tr. 859.) From January 24, 2013, until October 30, 2013, when CNP Dawson prepared her medical source statement, Ms. Tilla saw CNP Dawson eight times.[12] (Tr. 827-61.) Over the course of these

---

nonexamining consultants did not have the benefit of Dr. Carrejo's 2009-2011 treatment notes when they reviewed the medical evidence record. Attorney Armstrong provided those records to the ALJ on May 20, 2015, well after the nonexamining consultants reviewed the medical record evidence and made their assessments. (Tr. 772.)

[11] The ALJ mentioned Dr. Carrejo's September 2012 note in conjunction with his discussion about Amy S. DeBernardi, Psy.C.'s psychological evaluation of Ms. Tilla on June 7, 2013. (Tr. 24, 766-69.) Dr. DeBernardi obtained Ms. Tilla's relevant histories and performed a mental status exam. (*Id.*) After doing so, she indicated Axis I diagnoses of major depressive disorder, anxiety disorder, and posttraumatic stress disorder, chronic, and assessed a GAF of 52.[11] Dr. Bernardi assessed, *inter alia*, the Ms. Tilla's depression might impact her ability to be a dependable employee or to sustain a typical workday. (Tr. 769.) She also assessed that Ms. Tilla's anxiety might impact her ability to tolerate changes in the workplace. (*Id.*) Although Dr. Bernardi assessed certain functional limitations based on Ms. Tilla's depression and anxiety, the ALJ accorded her limiting assessments only partial weight explaining, without more, that they were "vague." (Tr. 24.) The ALJ instead relied on Ms. Tilla's ability to reason and understand as evidence that she had intact comprehension and memory skills. (*Id.*)

[12] The Administrative Record contains treatment notes from ABQ Health Partner from January 24, 2013, through April 27, 2015. (Tr. 801-881.)

eight visits, CNP Dawson diagnosed Ms. Tilla with lower back pain, idiopathic peripheral neuropathy, incisional hernia, bulging lumbar disc, lumbar neuritis, lumbar canal stenosis, joint pain, myalgia and myositis, obesity, Guillain-Barré syndrome, and anxiety. (*Id.*) The February 19, 2013, MRI CNP Dawson obtained indicated "a 3 cm x 1.2 cm left foraminal and extra foraminal Schwannoma at L4-L5[;] she also had right greater than left mild facet arthropathy at this level. At L5-S1 she has a disc protrusion and mild facet arthropathy resulting in right greater than left nerve effacement/abutment." (Tr. 857.) CNP Dawson continued the medication regimen previously established by Dr. Carrejo; *i.e.,* Methadone, Oxycodone, Ibuprofen, Percocet, Paxil and Effexor. (Tr. 827-61.) CNP Dawson (1) referred Ms. Tilla for a surgical consult;[13] (2) discussed the possibility of lumbar epidural steroid injections;[14] and (3) ordered an abdominal brace to help with her "rather large abdominal hernia."[15] (*Id.*) Of these eight records, the ALJ only discussed Ms. Tilla's initial January 24, 2013, office visit and the October 30, 2013, office visit. (Tr. 24, 25.) Further, although the ALJ relied on CNP Dawson's October 30, 2013, medical source statement to infer Ms. Tilla's onset of disability, he failed to acknowledge or discuss that in assessing Ms. Tilla's ability to do work-related physical activities, CNP Dawson considered the "chronicity of [Ms. Tilla's] medical history and the chronicity of findings as from **2009 to current examination**. (Tr. 771.) (Emphasis added.) In light of Dr. Carrejo's 2009 treatment notes, there is evidence that permits an inference of linkage with Ms. Tilla's pre-date-of-last-insured condition.[16]

---

[13] Ms. Tilla opted not to proceed with surgery. (Tr. 852.)

[14] Ms. Tilla was afraid of having a lumbar epidural injection and did not go through with it. (Tr. 849.)

[15] CNP Dawson noted that Ms. Tilla had pain and limited mobility from an "extremely large abdominal hernia" that could not be operated on at this point because of Ms. Tilla's current weight. (Tr. 830.)

[16] The Tenth Circuit has explained that the relevant question in the face of a retrospective diagnosis is whether there is evidence of actual disability prior to the expiration of a claimant's insured status. *Potter v. Sec'y of Health &*

For the foregoing reasons, the Court concludes that the ALJ failed to apply SSR 83-20 in determining Ms. Tilla's onset of disability.  The ALJ also failed to discuss and consider relevant evidence that creates the possibility that Ms. Tilla's physical and mental impairments were disabling prior to her date of last insured.  Because the medical evidence regarding the onset date of Ms. Tilla's disability is ambiguous, the ALJ was required to consult a medical advisor pursuant to SSR 83-20, but failed to do so.  This case, therefore, requires remand.

### B.      Remaining Issues

The Court will not address Ms. Tilla's remaining claims of error because they may be impacted by the ALJ's treatment of this case on remand.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

Ms. Tilla's Motion to Reverse and Remand For A Rehearing With Supporting Memorandum (Doc. 18) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**

---

*Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990); *see also Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012) (finding that post-dated-last-insured medical evidence generally is admissible in a Social Security disability determination in such instances in which that evidence permits an inference of linkage with the claimant's pre-DLI condition).